928 So.2d 80 (2005)
Jeff L. THIBODAUX & Kathleen Hartman Thibodaux
v.
ARTHUR RUTENBERG HOMES, INC. Southmark Construction Co., L.L.C., ABC Insurance and DEF Insurance Company.
No. 2004 CA 1500.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
*82 Adam McNeil, Eric J. Simonson, Margaret Diamond, New Orleans, Michael H. Rubin, Baton Rouge, Lewis J. Conwell, Marjorie Breaux, Tampa, FL, Counsel for Plaintiff/Appellee Arthur Rutenberg Homes, Inc. (as assignee of the claims of Jeff & Kathy Thibodaux).
James T. Rivera, Lafayette, Counsel for Defendant/Appellant Maryland Casualty Co.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
*83 McCLENDON, J.
The threshold issues in this suit for damages are whether the New Home Warranty Act, LSA-R.S. 9:3141, et seq. (HWA), prohibits a builder from contractually assuming enforceable warranties and obligations beyond those offered in the HWA, and whether the builder in this case clearly agreed to such greater warranties and obligations. Finding the exclusive remedy in this case to be the HWA, we reverse, in part.

FACTUAL AND PROCEDURAL BACKGROUND
The landowners, Jeff and Kathleen Thibodaux, purchased a lot on the Amite River in Livingston Parish to build a home. On August 31, 1999, they entered into a construction contract with the builder, SouthMark Construction Co., L.L.C. (Southmark). Southmark agreed to build their home from plans originally designed by its franchisor, Arthur Rutenberg Homes, Inc. (Rutenberg). However, the finalized plans were a combination of more than one Rutenberg design, with additional input from the owners. Although the preliminary Rutenberg designs and the Thibodaux plans contained notices to consult a structural engineer for certain construction elements, an engineer never reviewed or approved the final plans for the Thibodaux home.
The Thibodauxs took occupancy of the home in April of 2000. Shortly thereafter, they discovered several defects in the construction, some of which violated the applicable building codes. By certified letter dated November 22, 2000, the Thibodauxs, citing provisions of the HWA, notified Rutenberg and Southmark of the defects, and gave the builder a reasonable time to repair or correct the problems. Southmark accepted responsibility for some of the listed problems, including cracked and discolored stucco and sheetrock, a need for joist hangers on the lower level of the home, cracked doors and gaps around doorframes, and baseboard repairs. However, Southmark failed to effect any repairs.
On January 8, 2001, the Thibodauxs filed suit for damages under the HWA and for breach of the construction contract. Named defendants included Rutenberg, Southmark, and Southmark's insurer, Maryland Casualty Company (Maryland). By the time of trial, the Thibodauxs had settled with Rutenberg for more than the purchase price of the home, assigned their litigious rights to Rutenberg, and dismissed all their claims against Rutenberg as a defendant. On July 2, 2002, the trial court signed an order dismissing all the plaintiffs' claims against Rutenberg and assigning the plaintiffs' remaining claims to Rutenberg. After Southmark declared bankruptcy, Maryland took over the defense of the claim.
After an extensive trial, the trial court made the following findings in its reasons for judgment:
1. Rutenberg was an assignee of the owners, the Thibodauxs;
2. Rutenberg could pursue claims under the HWA and for breach of contract;
3. Southmark violated several provisions of the applicable building codes and breached its "contractual obligation to correct all defective and non-code compliant work in the home"; and,
4. non-pecuniary damages were awardable for the breach of the contract.
By judgment dated January 22, 2004, the trial court held against Maryland and awarded Rutenberg damages of $369,518.18, non-pecuniary damages of $100,000.00, expert witness fees of $30,704.29, and attorney fees of $145,111.78. Legal interest on the total *84 amount was awarded from the date of judicial demand.
Maryland suspensively appealed and assigned several errors to the trial court's judgment. Essentially, Maryland asserts that:
1. HWA is the exclusive remedy for construction defects and controls the amount and type of damages;
2. Rutenberg was not a proper assignee;
3. Maryland's policy did not provide coverage for professional services and the covered damage did not manifest itself during the policy period;
4. the amount of attorney fees was improper; and,
5. legal interest on the attorney fees should have been awarded only from the date of judgment.
Rutenberg answered the appeal. In its answer, Rutenberg asked that it be awarded attorney fees for its appellate work.

TWO CAUSES OF ACTION: HWA AND BREACH OF CONTRACT
A contract is the law between the parties, and is assignable, unless prohibited by the terms of the contract or voided by law. LSA-C.C. arts. 1983-84. In pertinent part, the construction contract at issue provided, as follows:
9.3 The Contractor warrants to the Owner for a period of one calendar year from the established date of Substantial Completion that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from normal defects not inherent in the quality required or permitted, and that the Work will conform with the requirements of the Contract Documents.
9.5 The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities bearing on performance of the Work. The Contractor shall promptly notify the Owner if the Drawings and Specifications are observed by the Contractor to be at variance therewith.
17.1 The Contractor shall promptly correct Work failing to conform to the requirements of the Contract Documents within a period of one year from the date of Substantial Completion of the Contract or by terms of an applicable special warranty required by the Contract Documents. The provisions of this Article 17 are to apply to Work done by Subcontractors as well as to Work done by direct employees of the Contractor.
Based on these provisions, Rutenberg argues on appeal that Southmark obligated itself to make the home "structurally sound and code compliant, along with the cost of correcting the incomplete and defectively constructed components of the home, plus damages for mental anguish...."
Conversely, Maryland asserts that the HWA is the exclusive remedy for defects arising from construction. As authority, Maryland cites LSA-R.S. 9:3150, which at the time of the contract stated in part that: "This Chapter provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply." (emphasis added).
At the time of the August 31, 1999 agreement, LSA-R.S. 9:3144 A provided the following warranties:

*85 (1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
(3) Ten years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
Specifically, the provisions of LSA-R.S. 9:3144 C "establish minimum required warranties and shall not be waived by the owner or reduced by the builder provided the home is a single or multiple family dwelling to be occupied by an owner as his home." (emphasis added). At the time in question, an owner was defined as "the initial purchaser of a home and any of his successors in title to a home during the time the warranties provided under this Chapter are in effect." LSA-R.S. 9:3143(6). A builder is defined as "any person, corporation, ... or other entity which constructs a home ...." LSA-R.S. 9:3143(1). If a builder breaches a warranty contained in the HWA, an owner has a cause of action for "actual damages, including attorney fees and court costs, arising out of the violation." LSA-R.S. 9:3149 A. However, the damages for all defects "shall not exceed the original purchase price of the home." Id.
Although the HWA controls over other Louisiana warranty and redhibitory defects law, it contains no language forbidding the parties to enter into a valid building contract. See Graf v. Jim Walter Homes, Inc., 97-1143, p. 9 (La.App. 1 Cir. 5/15/98), 713 So.2d 682, 690. Certainly, it provides that the minimum warranties may not be waived, but it also recognizes areas where the builder may contractually assume obligations preliminarily excluded by the HWA. See LSA-R.S. 9:3144 B & C. Thus, if a builder did assume greater warranties or obligations, the owner may have a cause of action based on the breach of those specific contract provisions.
The minimum one year warranty afforded by the HWA was for "any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards." LSA-R.S. 9:3144 A(1) (emphasis added). In the construction contract, the builder contractually agreed that "the Work will be free from normal defects," and that the builder "shall promptly correct" those defects. (Emphasis added.) A simple comparison of this language shows that the two warranties are virtually identical, and, if anything, the HWA provides broader warranties than does the construction contract. Thus, Rutenberg did not establish the existence of abnormal defects outside the broad coverage offered by the HWA. For the defects at issue here, the HWA provides the exclusive remedy, including the damages cap of the original purchase price of the home. See LSA-R.S. 9:3149 A.

Non-Pecuniary Damages
Having found that the HWA is the exclusive remedy in this case, its provisions also control the award of damages. Specifically, "[u]nless the parties otherwise agree in writing," Louisiana Revised Statutes 9:3144 B(8) excludes from warranty *86 any "[l]oss or damage which does not constitute a defect in the construction of the home by the builder, or any employee, agent, or subcontractor of the builder." Section B(13) excludes "any condition which does not result in actual physical damage to the home," and section (17) excludes "[c]onsequential damages." (Emphasis added.) Under LSA-R.S. 9:3149 A, recovery is limited to "actual damages ... arising out of the violation." Reading those provisions together, we find that, in the absence of a clearly written contract to the contrary, the HWA excludes non-pecuniary damage, "that is, damage of a moral nature which does not affect a `material' or tangible part of a person's patrimony." See LSA-C.C. art. 1998, Revision Comments-1984, comment (b) (citation omitted). The written contract at issue contains no agreement by the builder to pay for non-pecuniary damages.

Assignment
Maryland argues that Rutenberg cannot recover because it is not an owner under the HWA. In addition, Maryland fears it could be sued by the third party owner for the same claims asserted by Rutenberg.
The owners of the home, Mr. and Mrs. Thibodaux, filed suit against the builder, Southmark and its insurer, Maryland. Subsequently, pursuant to Louisiana law of assignment, the Thibodauxs assigned all their litigious rights arising from the contract and the construction of their home to Rutenberg. See LSA-C.C. art. 2652. On July 2, 2002, the trial court signed an order dismissing plaintiffs' claims against Rutenberg, and assigning to Rutenberg all of plaintiffs' remaining claims. Maryland did not attack the assignment itself in the pre-trial order or at trial. Thus, without objection, Rutenberg stepped into the shoes of the plaintiffs in this suit.
From our review of the pertinent evidence in this record, we see no basis to invalidate the assignment agreement.[1] Neither the contract nor the HWA voids the law of assignment of litigious rights, especially in this case where the owners, who possessed those rights, timely initiated the suit. See LSA-C.C. arts. 1984 & 2642, et seq.; Graf, 97-1143 at pp. 8-9, 713 So.2d at 690 (HWA does not provide blanket override of the freedom to contract). Notwithstanding the assignment, Maryland has no greater exposure to a second suit by a third party owner[2] than it would if the Thibodauxs had obtained the judgment, rather than Rutenberg.

COVERAGE
Maryland raises two coverage issues. The first is based on the policy's professional services exclusion. Specific to the first issue, Maryland argues that the damages claimed arose from the builder's failure to consult a structural engineer or the builder's professional decision to approve the plans itself. Thus, based on the exclusion for professional services, the policy affords no coverage.
We disagree with Maryland's analysis. From our review of Maryland's policy, the professional services exclusion does not apply to the facts before us. The damages claimed are based on defective construction *87 and warranties; not the rendering of professional design services. More importantly, the policy exclusion itself contains an exclusion for "construction work performed by [the insured]," and the builder's or contractor's work or product is defined in the policy as including "[w]arranties."
Secondly, Maryland argues that the policy provides coverage only for property damage caused by an occurrence, and the claimed damage does not fit within the policy definition of an occurrence during the policy period. For support, Maryland relies on the holding in Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1 Cir. 1992). In Swarts, this court held that where the liability of the contractor was based solely on improper construction, there had been no "occurrence" under the policy language sufficient to trigger coverage for construction defects. Swarts, 610 So.2d at 890.
As authority for its holding, Swarts cites several cases, including Fredeman Shipyard, Inc. v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La.App. 3d Cir.1986), which interpreted the same policy language at issue in Swarts. Based on the policy definition of "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured," and on a work product exclusion, the third circuit found no coverage for improper construction or faulty repair. Fredeman Shipyard, Inc., 497 So.2d at 374-75. However, in the Maryland policy before us, a different definition is used. An "occurrence" is defined only as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
In Gaylord Chemical Corporation v. Propump, Inc., 98-2367, p. 5 (La.App. 1 Cir. 2/18/00), 753 So.2d 349, 353, this court analyzed the same definition of "occurrence" relied on by Maryland in the case before us, and applied it to a defectively manufactured product. First, Gaylord determined that the property damage should be viewed from the standpoint of the victim or owner, rather than the insured. Gaylord, 98-2367 at p. 6, 753 So.2d at 354. Then, after reviewing the holdings of other circuits, this court concluded that an unforeseen or unexpected loss by a victim during the policy period constituted an "accident," and thus, an "occurrence," as that term was defined in the policy.
Although the Gaylord court found coverage for a defectively manufactured product, and the language of the policy was identical to the insurance policy here, the Gaylord opinion also recognized the Swarts holding as part of a consistent line of jurisprudence based on claims of redhibition or warranty. Gaylord, 98-2367 at p. 5, 753 So.2d at 353 & n. 5. Therefore, it is not clear from the opinion whether the Gaylord decision overruled Swarts or merely distinguished it. However, despite any ambiguity in Gaylord, it directly held that defective workmanship or the incorporation of defective materials is an accident, which results in an unexpected loss to the victim. That holding inferentially, if not directly, voided the primary basis for the decisions in Swarts and similar cases. For clarity, we specifically reject the line of jurisprudence that refused to find that defective workmanship or the incorporation of defective materials that resulted in unexpected losses is an accident. See Rando v. Top Notch Properties, L.L.C., 03-1800 (La.App. 4 Cir. 6/2/04), 879 So.2d 821, 825-34, and cited authority, including William Shelby McKenzie and H. Alston Johnson, III, Insurance Law and Practice § 183, at 370, in 15 Louisiana Civil Law Treatise (2d ed.1996); Oxner v. Montgomery, 34,727 & 34,766, pp. 7-9 (La.App. 2 Cir. 8/1/01), 794 *88 So.2d 86, 91-92, writ denied, 01-2489 (La.12/7/01), 803 So.2d 36; LSA-R.S. 9:3143(5), 3144 B(8), 3144 B(13) & 3149 A.
Of course, the finding of an accident alone does not answer the question of coverage. Coverage is not triggered unless "the defect causes property damage within the policy term." Oxner, 34,727 & 34,766 at p. 8, 794 So.2d at 91, writ denied, 01-2489 (La.12/7/01), 803 So.2d 36; see LSA-R.S. 9:3143(5), 3144 B(8), 3144 B(13) & 3149 A (recovery for actual damages).
From our review of the record in this particular case, we find that the improper construction and incorporation of defective materials resulted in unexpected losses, which constituted an accident, and that the accident occurred during the policy period. Thus, there was coverage under the Maryland policy.
Alternatively, Maryland argues that even assuming some coverage, speculative awards for repair of anticipated future damage are not covered by the policy. Maryland also claims that the record contains insufficient evidence of structural damage occurring during the policy period.
The process to correct or remedy the actual damage from the construction defects may include demolition or initially cause further damage to existing structures before repairs can be finalized. Apparently, Maryland attempts to separate one stage of the repair process from another. However, the so-called anticipated or speculative damage could have reasonably been found to be a part or element of the overall process necessary to repair the covered damage.
As to the claim the record does not support a finding of demonstrable structural damage, Maryland's argument also fails. The HWA provides recovery for actual damages; a broader concept than structural damage. LSA-R.S. 9:3149 A. The Maryland policy covered the period from February 19, 2000 to February 19, 2001. Among other evidence, the Thibodauxs testified to seeing unmistakable signs of damage caused by structural, materials, and workmanship defects; damage which was confirmed by their experts. The majority of the damage was observed by the owners during the policy period in the year 2000. A demand letter detailing the more serious damage was sent on November 22, 2000. Thus, the record reasonably supports the trial court's finding that actual damage, including structural, was observed in the disputed areas during the policy period.
This home suffered extensive damage. One of Rutenber's' experts testified that the home was not structurally safe, and continued to deteriorate. If Maryland did not agree with the assessment or the estimates for the repair procedures offered by Rutenberg, Maryland could have submitted its own detailed estimates for disputed repairs or procedures. Where alternative testimony on damage reports and estimates was submitted, our review revealed no manifest error in the trial court's acceptance of one expert's testimony over another. See Boyd v. Allied Signal, Inc., 03-1840, 1841, 1842 & 1843, pp. 21-22 (La. App. 1 Cir. 12/30/04), 898 So.2d 450, 463, writ denied, 05-0191 (La.4/1/05), 897 So.2d 606.

Attorney Fees
Maryland asserts that Rutenberg is not entitled to the attorney fees it incurred after the assignment. Maryland does not argue that the disputed fees would not have been incurred by the owners if they had continued the suit themselves. Rather, it specifically argues that Rutenberg cannot recover because it is not an owner.
The valid assignment of the litigious rights held by the Thibodauxs included "any and all claims that they might have *89 arising out of the construction of their home ..., whether now known or hereafter discovered, for ... attorneys fees, ... under the laws of the State of Louisiana..., or under any contract ...." We find no basis in this record for a rejection of fees arising from the pursuit of the claim merely because they arose after the date of the assignment.
Maryland also assigned error to the trial court's award of interest on the legal fees from the date of judicial demand. We agree. The judgment is amended to award interest on the attorney fees from the date of judgment. See Sharbono v. Steve Lang & Son Loggers, 97-0110, p. 10 (La.7/1/97), 696 So.2d 1382, 1388.
The final issue concerns Rutenberg's answer to the appeal and prayer for attorney fees for the work on the appeal.[3] From our review of the record, including the briefs and participation in oral argument, and considering that the appellant was successful in some respects, we award the appellee, Rutenberg, attorney fees of $13,250.00 for its work on appeal.
For these reasons, we reverse the trial court's recognition of the breach of contract cause of action, reduce the damages for correction of the defects to the original purchase price of the home, $156,700.00, and delete the award of $100,000.00 for non-pecuniary damages. Legal interest on the attorney fees is awarded from the date of judgment only. Further, we award Rutenberg $13,250.00 for attorney fees on appeal. The remainder of the judgment is affirmed. The costs of the appeal are assessed one-half to appellant, Maryland, and one half to the appellee, Rutenberg.
REVERSED IN PART, AMENDED, AFFIRMED IN PART, AS AMENDED, AND RENDERED.
GAIDRY, J., concurs with reasons.
GUIDRY, J., concurs in the result.
GAIDRY, J., concurring.
I agree with the ultimate result expressed in the majority opinion. Although the policy at issue contains a work product exclusion, its potential effect on the issues before us was evidently not submitted to the trial court, nor was its applicability set forth in Maryland's assignments of error. Thus, the effect of that exclusion is beyond the scope of our review. Uniform Rules of Louisiana Courts of Appeal, Rule 1-3.
I concur rather than join in the majority opinion because it indulges in a misplaced comparison of this court's opinions in Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1st Cir.1992), and Gaylord Chemical Corporation v. ProPump, Inc., 98-2367 (La.App. 1st Cir.2/18/00), 753 So.2d 349. The majority misinterprets dicta in Swarts, related to the policy definition of "occurrence," as the primary basis for its holding, when it is clear that its holding was actually based upon application of a work product exclusion. The majority then compounds its error by characterizing the Gaylord opinion as ambiguous, and suggests that Gaylord "overruled Swarts or ... distinguished it." It did neither. The Gaylord court cited Swarts with approval in a footnote for the proposition that coverage for damage to the insured's defective work or product is generally excluded under commercial general liability policies. Gaylord, 98-2367 at p. 5 n. 5, 753 So.2d at 353 n. 5. The Gaylord court thus *90 recognized the true basis of the Swarts decision, as the majority fails to do here. The majority's speculative interpretation of the cited cases is erroneous and serves no useful purpose in the context of this case.
I respectfully concur.
NOTES
[1] Since the date of the assignment at issue here, the legislature amended LSA-R.S. 9:3143(6) through Acts 2003, No. 333, § 1, and specifically recognized assigns as owners.
[2] We also note that the definition of an owner is limited to owners and their successors "during the time the warranties provided under [the HWA] are in effect." LSA-R.S. 9:3143(6); see LSA-R.S. 9:3144 A & 3146. Sale of the home does not extend the warranty. LSA-R.S. 9:3148.
[3] In its brief, Rutenberg also objects to Maryland's failure to file memoranda and proposed findings of fact in the court below. However, the trial court did not directly sanction Maryland for any failure to file the requested pleadings, and we see basis to do so in this court. Maryland's claims stand or fall on the record evidence.