970 So.2d 1028 (2007)
Robert A. BARNETT, et al.
v.
Candace WATKINS, et al.
No. 2006 CA 2442.
Court of Appeal of Louisiana, First Circuit.
September 19, 2007.
Writ Denied December 14, 2007.
*1030 Robert A. Barnett, William Christopher Beary, R. Ray Orrill, Jr., Angel L. Byrum, New Orleans, Peyton B. Burkhalter, Dennis H. Carriere, Metairie, Counsel for Plaintiffs/Appellants Robert A. Barnett and Lisa Z. Barnett.
Glen E. Mercer, Kourtney Twenhafel French, New Orleans, Counsel for Defendant/Appellee Assurance Company of America.
Richard S. Vale, Christopher K. Lemieux, Pamela F. Noya, Metairie, Counsel for Defendants/Appellees Ashland Homes, Inc., Candace Watkins, and Gregory Gordon.
Deborah Cunningham Foshee, Jon A. Van Steenis, Covington, Counsel for Defendants/Appellees Candace Watkins, Inc. and Trevor Watkins.
Thomas L. Gaudry, Jr., William H. Voight, Gretna, Counsel for Defendants/Appellees Gregory C. Gordon, Inc., Lynn Arnold Gordon, and Gregory G. Gordon.
Before: GAIDRY, McDONALD, and McCLENDON, JJ.
GAIDRY, J.
This is an appeal of a partial summary judgment dismissing some, but not all, of the plaintiff homeowners' claims against the liability insurer of their general contractor, based upon a finding that the New Home Warranty Act, La. R.S. 9:3141, et seq., barred the assertion of the dismissed claims and related damages. We affirm.

FACTS AND PROCEDURAL HISTORY
The plaintiffs, Robert A. Barnett and Lisa Z. Barnett, are husband and wife and the parents of three minor children. Sometime in 1996, plaintiffs retained Locus, A Louisiana Partnership (Locus) to provide professional design and construction administration services for the construction of a new residence in Covington, Louisiana. Matthew C. Voelkel, one of Locus's partners, acted as the primary designer for the construction project. On August 28, 1996, plaintiffs entered into a written construction contract with Ashland Homes, Inc. (Ashland), as general contractor, for the construction of their residence.[1] The stated construction price was $438,428.00.
Plaintiffs accepted the construction project on August 29, 1997, and their written acceptance was filed for recordation the same day. They occupied the residence on September 1, 1997. Ashland, or one or more of its principals or alleged successors, supposedly undertook to complete *1031 additional construction items, or "punch list" items, through the spring of 1998.
According to their petition, plaintiffs discovered defects in their home in November 2004, including severe water leakage and moisture retention, resulting in toxic mold growth. Plaintiffs allege that on May 8, 2005, they sent written notice of the defects and their claims by certified mail to Ashland, Locus, Voelkel, and other defendants involved in the design and construction.
Plaintiffs instituted this litigation against Ashland, Locus, Voelkel, and other defendants, including various liability insurers, on July 13, 2005, seeking damages for themselves and for their children. Their original petition contained 224 numbered paragraphs. In the title and in multiple paragraphs of the petition, plaintiffs specifically invoked the NHWA as a legal basis for recovery of damages, in addition to La. C.C. arts. 2315 and 2769 and various other statutes. Assurance Company of America (Assurance), as alleged liability insurer of Ashland, answered plaintiffs' petition, denying any liability on its part or the part of its insureds. Plaintiffs subsequently amended their petition twice, adding additional defendants and allegations of wrongful conduct on the part of original and newly-added defendants.
On April 7, 2006, Assurance filed a motion for summary judgment, seeking the dismissal of all claims by plaintiffs other than those for "major structural defects" under La. R.S. 9:3144(A)(3), on the grounds that the NHWA is plaintiffs' exclusive remedy and excludes most of the elements of consequential damages alleged by plaintiffs. On June 14, 2006, plaintiffs filed a memorandum in opposition to the motion, together with a number of attached exhibits. Assurance's motion was heard by the trial court on June 22, 2006, along with a number of other motions. After the hearing, the trial court took the matter under advisement.
On August 31, 2006, the trial court signed its judgment granting Assurance's motion and "dismissing all claims by plaintiff [sic] against [Assurance] in this matter." It also issued written reasons for judgment in which it characterized the motion as seeking to dismiss "all claims against [Assurance] that are not under the [NHWA]" and "all claims under that Act other than defects that fall under the ten year warranty provisions of the Act." On September 14, 2006, the trial court signed an amended judgment, correcting its original judgment to provide that in granting the motion, it dismissed "all claims by plaintiff [sic] against [Assurance] that are not under the [NHWA] in this matter."
Plaintiffs appealed, assigning as error the trial court's failure to find a genuine issue of material fact based upon the pleadings and evidence.[2] This court subsequently issued a rule to show cause why the appeal should not be dismissed for noncompliance of the judgment with La. C.C.P. art. 1915(B). On joint motion of plaintiffs and Assurance, the amended judgment was again amended on February 15, 2007 by the trial court to certify it as final for purposes of appeal, there being no reason for delay.

PROPRIETY OF APPEAL
The judgment appealed dismisses some of the claims or theories of recovery *1032 asserted by plaintiffs against only one party defendant, the liability insurer of Ashland, the defendant general contractor. Appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. McGehee v. City/Parish of East Baton Rouge, 00-1058, p. 3 (La.App. 1st Cir.9/12/01), 809 So.2d 258, 260. Accordingly, we must first consider whether this partial judgment is properly appealable to confirm the basis of our jurisdiction.
Louisiana Code of Civil Procedure article 1915(B)(1) provides that when a court renders a partial summary judgment as to "one or more but less than all of the claims, demands, issues, or theories" presented in an action, that judgment is not final for the purpose of an immediate appeal "unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay." This provision "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." R.J. Messinger, Inc. v. Rosenblum, 04-1664, p. 13 (La.3/2/05), 894 So.2d 1113, 1122.
In R.J. Messinger, the Louisiana supreme court held that the required designation of finality, or certification, need not include nor be accompanied by explicit reasons for the determination that there is "no just reason for delay" in order for an appeal to be taken from a partial judgment under La. C.C.P. art. 1915(B). However, the court emphasized that the trial court ideally should provide such reasons, and, if it does so, the standard of review of its certification is whether it abused its discretion. R.J. Messinger, 04-1664 at p. 13, 894 So.2d at 1122.
Because neither the trial court's judgment nor its subsequent order certifying the judgment as final provided explicit reasons for such certification, we are required to determine de novo whether the certification was proper. R.J. Messinger, 04-1664 at pp. 13-14, 894 So.2d at 1122; Motorola, Inc. v. Associated Indemnity Corp. [Motorola II], 02-1351, p. 16 (La. App. 1st Cir.10/22/03), 867 So.2d 723, 732. In conducting this review, we consider the "overriding inquiry" of "whether there is no just reason for delay," as well as the other non-exclusive criteria trial courts should use in making the determination of whether certification is appropriate:
(1) The relationship between the adjudicated and the unadjudicated claims;
(2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
(3) The possibility that the reviewing court might be obliged to consider the same issue a second time; and
(4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
R.J. Messinger, 04-1664 at pp. 13-14, 894 So.2d at 1122.
Although the limited nature of the judgment presents a close question on the procedural issue, based upon our consideration of all relevant factors, we find that the trial court's certification was appropriate. The adjudicated (non-NHWA) claims certainly are related to the unadjudicated (NHWA) claims, being based upon the same operative facts, but those different claims are not dependent upon each other for common resolution, nor inextricably related. Cf. Gold Dust Graphics, Inc. v. Diez, 06-0323, p. 6 (La.App. 1st Cir.12/28/06), 951 So.2d 270, 273-74.
There does not appear to be any possibility of the need for review at this point being mooted, given the nature, procedural *1033 significance, and relative finality of the ruling. Although the trial court's judgment dismisses the non-NHWA claims only as against Assurance, and those claims technically remain pending as against Ashland, any practical possibility of this court being obliged to consider this issue again is clearly outweighed by the importance to the parties of resolution of the issue at this stage of the litigation. In short, our review of the judgment now "best serves the needs of the parties." See R.J. Messinger, 04-1664 at p. 13, 894 So.2d at 1122. Additionally, the possible elimination of irrelevant testimony and evidence relating to impermissible theories of recovery and unrecoverable elements of claimed damages against some defendants will certainly expedite the trial of this action involving numerous party defendants. Considering all the circumstances, we conclude that a delay in appellate review until final determination of all issues would be unjust.
Based upon the foregoing considerations, we maintain this appeal.

STANDARD OF REVIEW
The judgment from which this appeal is taken is a partial summary judgment, and therefore subject to de novo review as to whether summary judgment was appropriate. Motorola v. Associated Indemnity Corporation [Motorola III], 02-0716, p. 5 (La.App. 1st Cir.6/25/04), 878 So.2d 824, 828, writs denied, 04-2314, 04-2323, 04-2326, 04-2327 (La.11/19/04), 888 So.2d 207, 211, 212.

DISCUSSION

Summary Judgment
The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A)(2). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The mover has the burden of proof that he is entitled to summary judgment. See La. C.C.P. art. 966(C)(2). If the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent's claim, action, or defense. La. C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B).
In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, *1034 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.
Here, however, the determination of the motion depends more upon the legal character of the claims pleaded rather than upon any dispute as to material fact. Although plaintiffs contend that the trial court erred in failing to find that a genuine issue of material fact exists, they also concede in their brief that "[t]he facts . . . are not generally in dispute," and frame the central issue as "whether or not . . . the undisputed non-structural defects of 1997-1998 discovered in 2005 are precluded from recovery [by virtue of] the NHWA."

The New Home Warranty Act
The NHWA was originally enacted in 1986, and amended in various respects in 1997, 1999, 2001, and 2003. As plaintiffs occupied their home on September 1, 1997, the version of the NHWA in effect on that date controls, and later amendments are inapplicable.[3] Louisiana Revised Statutes 9:3141, as then written, expressed the NHWA's purpose:
The Legislature finds a need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of home owners' insurance as additional protection for the public against defects in the construction of new homes. This need can be met by providing for uniform building standards in those parishes and municipalities that have not yet adopted building codes; by requiring that all new residential buildings comply with building standards; by adopting provisions that clearly state the scope and the time of warranties; by providing for insurance protecting home owners from breaches of warranty; and by making the required warranties mandatory in most cases.
To effectuate that purpose, the NHWA "provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply." La. R.S. 9:3150 (Emphasis supplied).[4]
The NHWA's "minimum required warranties" are mandatory, and cannot be waived by the owner or reduced by the builder. La. R.S. 9:3144(C). As applicable to this action, La. R.S. 9:3144(A) sets out those warranties:
A. Subject to the exclusions provided in R.S. 9:3144(B), every builder warrants the following to the owner:
(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards.

*1035 (2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards.
(3) Ten years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards.[5]
Unless the parties otherwise agree in writing, the above three "minimum required warranties" exclude such items as fences; landscaping, "shrubs, trees, and plantings"; improvements separate from the home itself; damage caused by the negligence or fault of parties other than the builder, his agents, employees, or subcontractors; dampness or other damage due to the owner's failure to maintain proper ventilation or drainage; damage which the owner has failed to timely mitigate; any condition not resulting in "actual physical damage to the home"; "[b]odily injury or damage to personal property"; any "incidental expense related to relocation during repair"; and "[c]onsequential damages." La. R.S. 9:3144(B). If a builder breaches the NHWA's warranties, the owner can recover any non-excluded "actual damages, including attorney fees and court costs," but "damages with respect to all defects in the home shall not exceed the original purchase price of the home." La. R.S. 9:3149(A); Thibodaux v. Arthur Rutenberg Homes, Inc., 04-1500, p. 6 (La. App. 1st Cir.12/22/05), 928 So.2d 80, 85.
Because the NHWA provides "minimum required warranties," it does not prohibit a builder from agreeing to increase, rather than reduce, his warranties to the owner of a new home. Thus, a builder may contractually assume greater obligations or warranties than those afforded by the NHWA, and under those circumstances the owner would presumably have a separate cause of action based upon the breach of those specific contract provisions. Id. Similarly, the builder may agree in writing to assume obligations or be responsible for items otherwise excluded from the NHWA's minimum required warranties under La. R.S. 9:3144(B). Id.
As Assurance correctly points out, plaintiffs have neither contended nor proven, in either their pleadings, affidavits, or brief to this court, that the construction contract contained provisions incorporating additional warranties beyond those afforded under the NHWA, or waiving any of the relevant items excluded from warranty under La. R.S. 9:3144(B). The construction contract at issue contains the following language pertinent to this issue:

I.
Contractor agrees and does hereby covenant and agree with Owners to erect and finish, in accordance with the conditions hereinafter set forth, the entire work described in the Contract and attached documents, plans, letters, specifications and addendum and to deliver to Owners, free from all claims or liens, improvements on the property. . . . Contractor warrants it shall pursue the work with diligence and in a professional and workmanlike manner, handle the job efficiently, properly supervise and direct all labor and use its best efforts and attention to safeguard and protect Owners' interest at all times. Contractor *1036 warrants it has visited the site and is familiar with the local conditions under which the work is to be performed by it. (Emphasis supplied.)
II.
. . .
. . . Contractor warrants it has reviewed and compared the plans, Letters, addendum and specifications and found no conflicts, with the exception of those noted in the Letters, including the exclusion of any driveways. However, if any other variances or conflicts are discovered, Contractor shall immediately notify Owners and their Architect. Contractor shall be responsible to correct any work not done in accordance with the aforesaid documents. . . .
Contractor shall indemnify and hold Owners harmless from and against claims, damages, losses and expenses whatsoever arising from the performance of the work under this Contract by Contractor or anyone directly or indirectly employed by Contractor or for whose acts Contractor may be liable. Contractor shall comply with all applicable laws, ordinances and regulations or public authorities dealing with construction and work pursuant to this contract and shall take all reasonable safety precautions whatsoever.
. . . .
XII.
Contractor agrees to protect and safeguard plants, trees, shrubbery and any other related living foliage in and near the construction site and approaching roadway to the home site as is reasonably possible under the circumstances.
With the possible exception of the last paragraph above (which might constitute a waiver of the exclusion relating to landscaping), the foregoing language does not add additional or greater warranties than those afforded by the NHWA. The emphasized language arguably might constitute "additional performance standards . . . [with] which the builder may undertake to be in compliance," but any such standards fall within the "building standards" to which the NHWA requires compliance. La. R.S. 9:3143(2). Similarly, the language does not reflect the intent to waive any mandatory statutory exclusion relating to the various elements of bodily injury damages, consequential damages, and nonpecuniary damages sought by plaintiffs.
Plaintiffs' primary argument against the exclusivity of the NHWA to their action is that Ashland failed to complete the construction contract and abandoned the project. In that regard, they rely upon Thorn v. Caskey, 32,310 (La.App. 2nd Cir.9/2/99), 745 So.2d 653. In that case, the home was 90 to 95% complete, but the contractor refused to return to the construction site to perform additional work until the final amount of the contract price was paid. The court found that the contractor abandoned the job before it was completed. The owners asserted a breach of contract claim, in addition to a claim for breach of the NHWA warranties: The court held:
The NHWA . . . was designed to protect the owner from faulty workmanship, but not to insure completion of the construction of a home under the terms of the contract between the owner and builder. Accordingly, we find that where the builder abandons construction of the home and fails to fulfill his obligations under the contract, he may be found liable in an action for breach of contract; however, he may also be liable for breach of the warranties outlined in the NHWA. Our finding that the [owners'] breach of contract claim was, in *1037 fact, a valid one, becomes significant in determining which damages proven at trial are recoverable and under what theory.
Id., 32,310 at pp. 6-7, 745 So.2d at 658.
We find Thorn clearly distinguishable. Although plaintiffs contend that Ashland and its principals "abandoned" the construction project in 1997, they also allege that the construction project was "accepted on or about August 26, 1997"; that their house "was constructed and completed under the direction of [Ashland's two principals]"; and that they "took possession and commenced occupancy of their house on or about September 1, 1997."[6] Plaintiffs' written acceptance, dated August 29, 2007, states that plaintiffs accepted their residence "in full compliance with the contract" between them and Ashland. Although plaintiffs contend on appeal that the construction project was not completed, their petition alleges that only "punch list" items were not completed or finalized, and that Candace B. Watkins, one of Ashland's principals, attempted to complete those items through 1998. "Punch list" items are "minor or inconsequential matters [that] remain to be finished" or "minor defects or errors in the work [that] are to be remedied." La. R.S. 9:4822(H); C & S Safety Sys., Inc. v. SSEM Corp., 02-1780, pp. 7-8 (La.App. 4th Cir.3/19/03), 843 So.2d 447, 452. Thus, such minor items certainly cannot constitute "major structural defects" within the meaning of the NHWA. See La. R.S. 9:3143(5) and 9:3144(A)(3). They likewise would not seem to fall within the definition of redhibitory defects. See La. C.C. art. 2520.[7]
The record before us does not contain any policy issued by Assurance to Ashland, its principals, or its successors. Although the existence of Assurance's policy issued to Ashland has been established, its precise contents have not. As the parties claiming the benefit of that policy, plaintiffs would bear the burden of proof at trial that Assurance is liable to them under the terms of that policy. Thus, it was incumbent upon plaintiffs to establish factual support that Assurance's policy somehow affords them greater rights than they might have against its insureds. The written insurance policy is an essential element of evidence in that regard. See Johnston v. Broussard, 41,477, p. 4 (La.App. 2nd Cir.9/20/06), 940 So.2d 79. Although plaintiffs claim that Assurance, as Ashland's insurer, "should not be able to hide behind the NHWA" and that the NHWA "runs in favor of a builder  not in favor of the insurance company," they offer no legal authority or factual support for their novel contention that the scope of a liability insurer's liability to a third party extends beyond the scope of its insured's liability for a particular loss or occurrence. Their contention has no merit.
In its reasons for judgment, the trial court observed:

*1038 Assurance Company of America contends the [NHWA] is the exclusive remedy available to plaintiffs. Plaintiffs have asserted a laundry list of claims but they all arise from the alleged faulty and defective construction of the home. It is clear to the Court that this Act "is an exclusive remedy and that all other theories of recovery are excluded." [Citation omitted.] Seeking to get around the exclusivity by crafting recovery claims through "other theories" as done by plaintiffs in this case does not do away with the exclusivity of the remedy. . . .
Whether the Court agrees the [NHWA] was a fair tradeoff between the construction industry and homeowners cannot enter into the Court's ruling. It is clear that exclusivity is the tradeoff the legislature accepted and the Court must apply it despite temptations to judicially ameliorate its [effect] by latching onto one or more of a laundry list of claims that all relate to alleged faulty and defective construction.
We agree with the trial court's succinct analysis of the issue presented. Despite plaintiffs' detailed and frequently repetitive pleading of factual contentions and theories of recovery against Ashland, its principals, alleged successors, and Assurance, all of those various claims essentially coalesce into "claims between a builder and an owner relative to construction defects in a new residence." See Carter v. Duhe, 05-0390, p. 10 (La.1/19/06), 921 So.2d 963, 970. Thus, the NHWA is clearly plaintiffs' exclusive remedy against Ashland and any other defendant "builder." Id. See also Thibodaux, 04-1500 at pp. 6-7, 928 So.2d at 85; Sowers v. Dixie Shell Homes of America, Inc., 33,390, pp. 2-3 (La.App. 2nd Cir.5/15/00), 762 So.2d 186, 188-89, writ denied, 00-1770 (La.9/22/00), 768 So.2d 1286. By extension, the NHWA is also plaintiffs' exclusive remedy against Assurance as the liability insurer of Ashland. See La. R.S. 9:3147 and La. R.S. 22:655.
Assurance sought summary judgment dismissing all of plaintiffs' claims against it other than those for the ten-year warranty for "major structural defects" under La. R.S. 9:3144(A)(3), and the trial court in its reasons seems to have agreed to grant that relief. However, the actual judgment, as amended, limits the dismissed claims to "all claims by plaintiff [sic] against [Assurance] that are not under the [NHWA] in this matter." The judgment's language necessarily must control, so the issue of the viability of any claims under the one-year and two-year warranties of La. R.S. 9:3144(A)(1) and (2) remains to be decided.
The judgment of the trial court is affirmed. All costs of the appeal are assessed against the plaintiffs, Robert A. Barnett and Lisa Z. Barnett.
AFFIRMED.
NOTES
[1] Plaintiffs have alleged that Ashland was incorporated by two principals, Candace B. Watkins (its president) and Gregory G. Gordon, also named as defendants individually. Those defendants were dismissed by a separate summary judgment of July 6, 2006, which is the subject of another appeal in this court, bearing Docket No. 2006 CA 2315.
[2] Plaintiffs also contend in their assignments of error that the trial court "abused its discretion," but fail to adequately address in their brief the nature of the trial court's action in that regard, or the basis for their contention that that standard of review is somehow applicable. Accordingly, we consider that assignment of error as abandoned. Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4.
[3] If the NHWA affords a remedy to an owner, such remedy comes into existence on the "warranty commencement date," defined as "the date that legal title to a home is conveyed to its initial purchaser or the date the home is first occupied, whichever occurs first." La. R.S. 9:3143(7). If the NHWA applies, its mandatory provisions determine the essential elements of the owner's cause of action and remedy, rather than the building contract. The "warranty commencement date" seems to be the operative date for determining which version of the NHWA applies, rather than the date of the contract. See, e.g., Carter v. Duhe, 05-0390, p. 10 n. 9 (La.1/19/06), 921 So.2d 963, 970 n. 9 (implicitly recognizing that the "time of the sale" determined whether a statutory amendment to La. R.S. 9:3145 applied). The warranty commencement date here was September 1, 1997. Therefore, the 1997 amendments, effective August 15, 1997, apply to this action.
[4] By Acts 2001, No. 179, § 1, the NHWA's prescriptive periods in La. R.S. 9:3146 were changed to peremptive periods. See also Acts 2003, No. 333, § 1, amending La. R.S. 9:3150.
[5] "Building standards" are defined as those applicable standards adopted by the local political subdivision and in effect when construction begins, or, absent such standards, the Standard Building Code, "together with any additional performance standards, if any, which the builder may undertake to be in compliance." La. R.S. 9:3143(2).
[6] Under the Private Works Act, La. R.S. 9:4801, et seq., a work is considered "substantially completed" when the last work is performed on the immovable property or when "[t]he owner accepts the improvement" or "possesses or occupies the immovable." La. R.S. 9:4822(H). Plaintiffs' acceptance of the construction project and their occupancy of their house are material because the date of recordation of the owner's acceptance of the work or the date of occupancy establishes the commencement of the deadline for filing of contractors' privileges. See La. R.S. 9:4822(B), (C). Those events also determine the commencement of the peremptive period for an action by the owner against a contractor for breach of a building contract under the Private Works Act. La. R.S. 9:2772.
[7] The Civil Code articles on redhibition do not apply to hidden defects discovered in a new home governed by the NHWA. La. C.C. art. 2520, Revision Comments  1993, (e).